The next case is Panduit v. Corning Optical Communications. I'd like to now turn to the 3-2-0 patent, which is even simpler and more obvious than the three patents we just dealt with. It also involves another instance in which Corning is trying to read limitations into its broad claims to preserve their validity. So that's again problematic. So the 3-2-0 patent is a case study in obviousness. Rectangles within rectangles. At the request of its customers, Corning used standard prior art parts and industry standards to assemble them like puzzle pieces, the epitome of KSR. In the course of not finding these claims unpatentable as obvious, the board committed two important errors. Well, is it the board that committed errors, or did you commit errors? I mean, the board made an express fact finding that your expert used the incorrect size and in his calculations. I mean, it was your burden, right? It is indeed our burden of showing invalidity, Your Honor, or unpatentability. But the reason why the board got it wrong was because what Dr. DeCusade has used was the Focus 10A standard, which is the cutouts used to place those adapters in place. And the reason why that was appropriate is because if we look at A1145 in the Focus standard, what it says is that the dimensions of the surfaces of the adapter that interface with the mounting panel are defined by the cutouts of the panel. So that's a fact finding that you want us to find to be clearly erroneous? We do believe they read the Focus 10A document incorrectly or not in complete context. But it was a fact finding that the board made, so we'd have to find it to be clearly erroneous. Lacking substantial, yes, Your Honor. Lacking substantial evidence. And I think the second part of that is that, in addition, he did account for that. So either way, the board was incorrect because Dr. DeCusade has took into account unclaimed adapter features such as mounting and finger accessibility, et cetera. So even if he used a standard that was incorrect in the board's view, it didn't matter because he specifically accounted for things like mounting and other things where you're getting access to the adapters, et cetera, none of which are claimed, by the way, which is really our lead argument here, which is that these are all features that are being read into the claims. And you're actually asking us to conduct a claim construction for the first time on appeal, aren't you? We're not, Your Honor, but this is an issue of claim construction and the cases are clear on this. But there was no issue of claim construction presented below, was there? But the board's analysis raises that because what happened here was that by reading limitations into the claims, by reference to Corning's embodiment, what the court did was effectively construe the claims to contain these limitations. And that's the problem. And then turn it back on us and say, well, you didn't satisfy these unclaimed limitations in your validity analysis, despite the fact that actually Dr. Nikusaitis did. That's why when he did his analysis, which was almost exactly the same thing that Inventor Staber did completely independently, he accounted for those features. And I guess I just would like to talk about that for a second because that's a key issue with this appeal that neither the board addressed or Corning, and Corning never addressed in their briefing. The fact that the analysis that Dr. Nikusaitis used was the same as what the inventor did and they did it completely independently, which underscores the obviousness of this. Didn't he concede that there would be lots of other factors that you might take into account and that he didn't take them into account? But he did take them into account. In fact, what he said was that he was taking into, by removing the adapter, by first calculating a maximum number of adapters that would fit into this standardized use space, which is what Mr. Staber did, the inventor, he then said, I'm going to remove a requisite number of adapters that in my knowledge of one of skill, would be necessary to take care of everything else. The accessibility and all these limitless unclaimed adapter features that Corning raises. That's exactly what Mr. Staber did. In fact, if you compare their respective testimony, if you look at Staber at A2753-55 and compare that to DeCusades at A1009-19, they did the same thing. First Staber determined how many LC adapters would fit within a standard use space. And then secondly, Mr. Staber used his knowledge of one of skill to remove a certain number to account for all of these unclaimed features, even though he didn't have to. That's exactly what Mr. Staber testified to. The only daylight between what they did is the fact that Mr. Staber used an actual LC adapter and Dr. DeCusades used the cutout that that adapter sits in. Right. So the board found that he used the wrong size. But what the board didn't account for next was the fact that he accounted for any material that could go around the rim of that, for example, or these other unclaimed adapter features. And there could be limitless unclaimed adapter features. And that's the problem here. So basically when Dr. DeCusades was saying that he wasn't trying to design a full chassis, which I believe is what your question is directed to, what he was really saying is that he couldn't predict all of the various things he had to account for. And there are a lot of them. First, there are a myriad of unclaimed features. And second of all, there are actually claim features he has to worry about. For example, what's the ratio of simplex adapters to duplex adapters? So depending upon that particular composition, he'll have to account for that. And that's exactly why he left adequate space. And in fact, he left plenty of adequate space. 20% height and 25% width in the context of the first use space standard. And for the second one, it was 20% and 40%. So tons of space to account for all of these different features. So he did account for that, and the board didn't address it. And that's really a fundamental problem in the board's reasoning. Because this invention is incredibly obvious. And I think it's remarkable that... Is that a new legal standard? Incredibly obvious? Incredibly obvious, yes. Mr. Staber did almost exactly the same thing as Dr. DeCusades independently. I've never seen that in a case before, where the inventor actually independently came up with what the expert did, and vice versa. So I think that's the first thing. The second thing is that it's interesting to note that Corning actually never responds to the correctness of the calculation that Dr. DeCusades came up with. But he even admitted that his calculation was purely random. He basically just said, I left randomly some space, and it could have even been enough space for even more than 50. How is that clear enough expert testimony to meet your burden? So Dr. DeCusades' testimony spans 20 pages of analysis. Yeah, but he kept saying that he didn't do anything very precise. Oh, he did very precise. He showed all of his work with respect to how many adapters could fit in to that use space on a theoretical basis, which is what Mr. Staber said he did. And then he subtracted out an amount that the knowledge of one of skill and the art would determine. Well, he didn't say it was an amount that one of skill and the art would determine. He said, I just left, I thought, enough of an amount. I mean, his testimony was very non-precise. Well, to me, that's exactly the same thing. And that's what Mr. Staber, I apologize, Your Honor. Go ahead. That's what Mr. Staber testified to, though. He said he removed some as well. But the question is, what does the patent show? OK. Oh, yeah. That's a question. OK. Well, it's interesting, because how do we know how they got to the various numbers that they recite in the claims? Good question. So I think the answer is, and how it helps us here, is that people of skill and the art do these sorts of calculations and make judgment calls all the time. And I think that this patent supports that. And in fact, when the invention is incredibly obvious, this court's precedent is clear that the expert does not have to spell out every single detail, especially with respect to this point, when it's clear that the knowledge of one of skill is what's at issue here. And we cited a litany of cases for that proposition. So the board was erred in rejecting his testimony as conclusory on this particular point. And the case law backs that up, especially when dealing with simple inventions where common sense shouldn't be left at the door. But just to reiterate, at no point does Corning actually challenge the end result of these calculations, that the gross amount of use space left over for all of these unclaimed adapter features was actually enough. So under Drinkware, that kills them, because they should have responded by saying— The board expressly said that it gave his testimony minimal weight because it found it to be so sloppy. I mean, I don't know how we get around that. Well, the way you get around it is, first of all, they should not have been making all these requirements relating to finger access that appears nowhere in the claims, or mounting requirements nowhere in the claims. It goes on and on, all these different features that it read in. So I think that's the first step, and that's a purely legal question. So that's one way around it. I think the second way around it is the fact that Dr. DeCusadas did account for these features, even though he didn't have to. But there was evidence that one of skill in the art would consider accessibility, right? That they might, but that wasn't what was claimed. We have a very simple claim here. It's only three limitations, two of which are disclosed in the Wheeler reference. No one can test that. But if one of skill in the art would, in connection with these claims, consider issues of accessibility, then why— And the board made that finding. Why do we ignore that? Because they're not— I think we have to go back to the fact that they're not claimed. But even if we should take them into account, Dr. DeCusadas did. And that's what the board didn't address. The board doesn't address the fact that he took that into account. I mean, look how much use space was left. We do the calculations in our brief, which are based on Dr. DeCusadas'. In one case, it's 40% width and 20% height. That's how much space was left over to take care of all of these things. And that's really part of the problem here, is that where do you stop? Because there's so many unclaimed features and so many other future unclaimed features, it's hard to get a full understanding of what Dr. DeCusadas should have done when we're dealing with a moving target, which is, what are we reading into the claims and what shouldn't we be? So I'll reserve my remaining time for rebuttal if there are no further questions. We will hold it for you, Mr. Melendez. Thank you. Mr. Oakley. Thank you. Do you do the arithmetic differently? Thank you, Judge Laurie. May it please the court, John O'Quinn on behalf of Corning. Pandewitt's approach to obviousness here suffers from at least two independent failures of proof, either of which require affirmance of the board's decision. First, its expert's analysis depends entirely on a misreading of the focus document, which the board rejected on the facts. And they don't even, in their brief, argue about why the board is wrong in its reading of the document. That means that Pandewitt's expert consistently understated the size of adapters by equating them with the size of the mounting holes, as opposed to the entire structure of the adapter. That measurement is the linchpin of their theory, and without which it simply has no evidence relating to the density limitation. How do you respond to the argument that he didn't do anything differently than the inventor did? Well, Judge O'Malley, I think the testimony that he's referencing come up in very different contexts. One is the inventor telling you what he did without getting into all of the calculations that the inventor actually did, but walking through just as a general matter what his process was. The other is attempting to satisfy their burden of showing that a person of ordinary skill in the art would have found these density limitations to be obvious. And the board made factual findings, as Your Honor previously noted, about the things that a person of ordinary skill in the art would have considered. And of course, one of the things that a person of ordinary skill in the art would have considered was the actual size of the adapters as opposed to the size of the hole, which consistently understates the measurements that their expert did. And so I think that those factual findings by the board compel affirmance. Now, I think what it's telling is that in their reply brief, and again today here at oral argument, Candewitt attempts to shift the burden of proof to Corning, citing this court's decision in dynamic drinkware. And that's an astonishing proposition because this court in Magnum Oil specifically addressed this very issue and said, quote, no burden shifts from the patent challenger to the patentee. That is especially true where the only issues to be considered are what the art discloses, whether there would have been a motivation to combine the prior art, and whether that combination would render the patent claim obvious. And this court in Magnum Oil specifically addresses and distinguishes dynamic drinkware, explaining no, no, that's dealing with the situation where the patent owner is attempting to swear behind, and there the patent owner has a burden. But that's not true in terms of obviousness. And the argument that the Pandewitt is relying on is inconsistent with Magnum Oil, and it's inconsistent with cyclobenzaprine. They also attempt to manufacture a contrived claim construction argument for this appeal to avoid substantial evidence review, precisely because they know that they cannot overcome the board's factual findings. And there was no interpretive dispute before the board, and there is no interpretive dispute on appeal here because this situation is exactly like what the court has encountered in a number of other contexts. The board can consider what would actually motivate a person of ordinary skill in the art. And it's not just simply to determine what is feasible. They have to be motivated to want to combine the prior to make something that is desirable, as this court put it in Winner International v. Wang. And I think this court's decision in Apotex v. Wythe captures it well. It said, quote, to the extent the board considered stability, which was not a limitation in the claims, but considered stability during its obviousness analysis generally, it did so in the context of assessing whether a skilled artisan would have been motivated to combine the references. That is not the same as importing a limitation into the claim, end quote. But yet, he's essentially arguing, well, that is importing a limitation into the claim. And just like in the pharmaceutical context, in deciding what would motivate a person of ordinary skill in the art to develop a particular drug, you will consider, well, is it going to be therapeutically effective? Will it be nontoxic? Those things don't have to be written into the claim in order for it to be legitimate for the fact finder to consider that that is what would motivate a person of ordinary skill in the art. And again, this court's decision in Institute Pasteur, I think, directly addresses that. I take it that your basic argument is that this is really a factual issue. And under our standard of review, there was substantial evidence in the record to support the board. Judge Plager, you literally took the next words right out of my mouth. That's exactly what I was going to say. I didn't mean to do that. Well, I appreciate you doing it. It saves you time. It saves me time. And to that end, perhaps it saves you some time as well. That is the crux of our argument. I think this all does come down to factual findings by the board. And unless the court has questions about those or further questions for me on any of the issues that have been raised, I'm not sure there's a lot more to be said. Because I don't think that there is a claim construction issue here that is presented at all. It's certainly not importing limitations. There is one thing more you could say is thank you. I will say that then. And you can sit down. If there are no further questions from the rest of you, thank you all. No one ever loses points by surrendering time. Yes. Mr. Millender. Hi, Your Honors. Just a couple points to address with respect to a couple things that were just raised. With respect to the drinkware issue, we never said that the burden of persuasion rests with them. That rests with us as the challenger to the patent. The burden of production, however, does shift to them when we made our prima facie case of obviousness. And that's the issue here. They didn't respond to why the end result of our calculations was wrong. We've never seen that. And, in fact, we still haven't heard why they're wrong. Why is that number at the end of the day wrong? The second thing with respect to motivation, we have to remember. So they make an argument basically that all of these unclaimed features go to the issue of motivation. Well, the problem with that is that the real issue about motivation had to do with increasing bandwidth. That's really the essence of what all these patents are about is the issue of increasing bandwidth and fiber optic density. And the issue of all of these unclaimed features, they're just not in the claims. So to shoehorn them in through the issue of motivation is just really a thinly veiled claim construction argument. So there are a number of different ways in which this court can reverse or, at a minimum, remand. First is with respect to the claim construction issue, which is a pure question of law. The second is that the board's decision holding Dr. DeCussetis' analysis as conclusory was wrong, despite the fact that it spanned 20 pages and was almost identical to what their own inventor did, even though they did it completely independently. And that his analysis was consistent with the law, which is where you have a very obvious invention that's very simple. You don't have to say every single thing in your declaration, especially things that are known by one of ordinary skill in the art, like this particular issue of how much space to leave, which is exactly what Mr. Staber testified to. And then lastly, as I just said, Corning didn't satisfy its burden of production in coming back and saying, OK, this is why your end result is wrong. And we still haven't heard that today. So I think what this case boils down to is the application of very simple math using known standards and prior art. And for these reasons, we believe that we prevail and that this court should reverse or, in the alternative, remand. Mr. Melendez, I'm struck by the fact that these two cases, these two matters that we've been hearing, have the same parties in them and somewhat the same attorneys. And I'm struck by the fact that the board, the boards or the board that decided all of these cases were the same board. It was the same board. And I'm struck. I realize we don't do justice up here. We do law. But I'm struck by the Solomonic character of these cases. The board gave Corning something. The board gave Bandewidth something. A more Solomonic result you couldn't ask for. I'm not suggesting you're being ungrateful for what the board did for you, but I was struck by this. It's an interesting situation, although, of course, it doesn't influence us because we don't do justice. Actually, Your Honor, we found the whole thing rather inexplicable because there are a series of these inventions and a series of appeals relating to this exact same technology in which the board held that the claims were unpatentable. And, in fact, there are five appeals, four of which all relate to findings of obviousness or anticipation. So we think this is really the outlier. And this should fall in line with all of those other cases because, frankly, all of this technology at its core would have been very obvious. And, in fact, this is really the poster child. Well, maybe the problem is you just treated it like an outlier because you thought it was going to be an easy case and you didn't prove it. I don't believe so, Your Honor, because I think what Dr. DeCusadis did over the course of 20 pages was give a very robust explanation. The thing that the board is faulting us for was not giving more detail on this particular point of how much space is left. But people of skill and the art in this area, maybe because the technology is relatively straightforward, they don't really explain that. And, in fact, the determination... Well, there was an expert on the other side. I'm sorry? There was another expert. There was, Mr. Pearson. One that the board found more credible. No, and actually what happened in that case was that Mr. Pearson never challenged that result. He took pot shots about the unclaimed features, but not about the actual result. And that's what's really bizarre about this is that the burden of production should have shifted at that point. Thank you, Mr. Melinda. The case is submitted.